# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL REARDON *et al.* | : |
| | : |
| Plaintiffs, | : CIVIL ACTION |
| | : |
| v. | : NO. 12-2451 |
| | : |
| ILLINOIS TOOL WORKS, INC., | : |
| | : |
| Defendant. | : |

## MEMORANDUM

YOHN, J.                                                                                                                April 10, 2013

Plaintiffs, husband and wife Daniel Reardon and Anita Heriot Reardon, bring this products liability action against defendant, Illinois Tool Works, Inc. ("ITW"), based on allegations that Mr. Reardon was injured while attempting to assemble an ITW-manufactured product. Plaintiffs bring design defect and warning defect claims, and Mrs. Heriot Reardon brings a claim for loss of consortium. Before me is ITW's motion to exclude plaintiffs' proposed expert, Gary Sheesley, P.E., from testifying. ITW has also moved for summary judgment on all of plaintiffs' claims; some of its arguments for summary judgment are predicated on the exclusion of the expert testimony, and some of its arguments are independent of exclusion. For the reasons set forth below, I will deny both ITW's motion to exclude and its motion for summary judgment.

## I.     Factual and Procedural Background

Mr. Reardon was working with a framing nailer manufactured by ITW. (Reardon Dep. 64; Def.'s Mot. Summ. J. Ex. 2.) The nailer is powered by a battery and a hydrocarbon fuel cell. The fuel cell has a chamber-within-a-chamber design. In the outer chamber there is pressurized

gas and in the inner chamber there is liquified propane. In order to operate the nailer, a metering valve must be installed on top of the fuel cell so that the proper amount of fuel is discharged into the combustion chamber of the nailer. (Def.'s Mot. Summ. J. Ex. 2.) The metering valve is installed by manually pressing two tongs on the bottom of the valve into grooves notched in the top of the fuel cell. (Sheesley Dep. 155-56; Opp'n Mot. to Exclude Ex. G.)

When Mr. Reardon attempted to "seat" the metering valve on the fuel cell, he was able to insert only one tong before the valve got stuck. At this point, he could neither complete installation nor remove the valve completely, and gas was discharging from the fuel cell. As a result of the botched installation, Mr. Reardon suffered a pneumatic injection of high-pressure gas into the skin under his right thumbnail. (Reardon Dep. 90, 124-131.)

As a result of this incident, plaintiffs brought suit against ITW. Plaintiffs retained Sheesley as an expert to inspect the incident fuel cell and other exemplar cells. Sheesley will testify as follows, based on his reports and deposition. The fuel cell was defectively designed because it could accidentally release high-pressure gas when users attempt to attach the metering valve. Mr. Reardon incurred his injury while attempting to attach the metering valve according to the provided instructions. There were no warnings to inform users that gas could be released at hazardously high pressures. He will further testify that an alternative design that is economically and technically feasible could have eliminated the possibility of such hazardous release, or else ITW could have sold fuel cells preassembled with the metering valve. Finally, he will opine that Mr. Reardon was using the fuel cell in the intended manner and was in no way responsible for his accident.

ITW moved to exclude Sheesley's testimony as unreliable and, in conjunction, moved for

summary judgment. I held a hearing on its motion to exclude on March 6, 2013. Both parties assume that Pennsylvania substantive law applies, and I agree. *See Klein v. Council of Chemical Ass'ns,* 587 F. Supp. 213, 220 n.2 (E.D. Pa. 1984). Thus I apply the Restatement (Third) of Torts. *See, e.g.*, *Sikkelee v. Precision Airmotive Corp.,* No. 12–8081, 2012 WL 5077571 (3d Cir. Oct. 17, 2012) (confirming its prediction that when confronted with the issue, the Pennsylvania Supreme Court will adopt the Restatement (Third) in product liability actions).[1] The Restatement (Third) recognizes three broad theories of liability: manufacturing defect, design defect, and warning defect. Restatement (Third) of Torts: Prod. Liab. § 2 (1998). Only the latter two theories are implicated here. (Def.'s Mot. Summ. J. at 9; Pl.'s Mem. Law Opp'n Mot. Summ. J. at 6.) So while the complaint speaks in terms of the "traditional doctrinal categories" of strict liability, negligence, and breach of warranty, *see id.* cmt. n, I will construe it as asserting claims for defective design and defective warnings.

## II. Discussion

### A. Legal Standard

#### 1. Motion to Exclude Expert Testimony

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. As the Third Circuit has explained, the Federal Rules of Evidence "embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact," and Rule 702 "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). Yet Rule 702 does place some constraints on the admission of expert

---

[1] At oral argument, the parties agreed that the Restatement (Third) of Torts applied as well.

3

testimony: "(1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Id.* (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994). "In interpreting this second requirement, we have concluded that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable*." Id.* (internal quotation marks omitted); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) ("[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.").

The reliability inquiry is flexible and may include (but is not limited to) factors such as "whether a method consists of a testable hypothesis" or "whether the method has been subject to peer review." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 247 (3d Cir. 2008). Not all factors listed in *Daubert* are applicable to every case, and the inquiry must be tailored to the facts at hand. *See id.* at 248.

### 2. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l*

*Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

B. **Application**

With regard to the design defect claim, ITW focuses heavily on Sheesley's lack of recordation and fixed methodology as grounds for excluding his testimony as unreliable. With regard to the warning defect claim, ITW argues that Sheesley cannot render an opinion because he has not tested an alternative warning. It further argues that Sheesley's testimony would be unsupported speculation because he has no experience with the product at issue. I find ITW's arguments unavailing.

Based on Sheesley's deposition and reports, I am convinced that he has reached his conclusions through a reliable process.[2] While Sheesley cannot point to which specific exemplar fuel cells he has manipulated, this is not a sufficient reason to discount his explanation that he was able to achieve an accidental gas release with at least *some* of the cells. Furthermore, he has drawn on his experience and knowledge as an engineer, as well as other information such as OSHA regulations and the accidental gas release that he replicated, to opine that gas could be released from the fuel cell at sufficiently high pressure to cause an injection injury.[3]

While Sheesley has not formally designed an alternative fuel cell and metering valve, he

---

[2] Sheesley was qualified at the hearing to render an opinion on a design defect. He was qualified as an expert in mechanical engineering in compressed gasses through his education and experience with high pressure equipment involving compressed gas that he designed, built, and maintained for small companies.
  Sheesley's thirty-five years of experience also includes designing metering valves used on blasting equipment as well as authoring product instructions and product warnings. He has dealt specifically with metering valves that function in the same fashion as the metering valves of the defendant.

[3] Whether the amount of gas that Sheesley caused to be released is sufficient to extrapolate to the amount of gas that caused the injury is a matter for the fact-finder.

can reliably opine on the feasibility of an alternative design. First, ITW *already* markets a differently designed fuel cell with a screw-on metering valve, which largely reduces the risk of injection injury. (Sheesley Dep. 174-76.) Second, Sheesley's proposed alternatives are relatively straightforward; his suggestions include a design in which the metering valve is installed at the factory, such that there is no need for the installation procedure that caused the injury.[4] (*Id.* 177-78.)

Meanwhile, *Pineda* makes clear that testing of alternative warnings is not necessary for Sheesley to testify on the warning defect claim; an engineer can opine on the necessity of a warning based on "specialized, rather than generalized, experience" in the area. *See id*. at 248. The parties do not join issue on whether Sheesley is qualified to offer expert opinion on the warning. Under the liberal standard set forth in *Pineda*, he would appear to qualify even though he is not a "warnings expert." Engineers who understand the mechanics and risks of the devices at issue can opine that proper warnings are necessary because "a proper warning is also a solution to an engineering problem." *See* 520 F.3d at 245.

The issue is not the exact wording or layout of the warning, which might necessitate a warnings expert, because "the foundation of [the] claim is that no warning or instruction existed at all." *Id.* at 245 n.12. The warnings appearing on the fuel cell and in the nailer manual failed to communicate the risk of injury from high pressure gas emitting from the cell. That is, there is no warning specific to the risk encountered by the plaintiff—high pressure gas release from the fuel cell causing injury from the gas itself. While Sheesley has not specifically dealt with metering

---

[4] Defendant argued at the hearing that pre-installation of the metering valve would significantly compromise the shelf life of a fuel cell. However, Sheesley opined that it would be a simple matter to design a metering valve that did not leak.

valves for finishing-nailer fuel cells, he has worked with pressurized equipment and he has designed metering valves. (Sheesley Dep. 56-66.) This gives him enough "specialized" experience to opine on the hazards of the fuel cell.

Thus, I find that the method Sheesley followed in formulating his opinions is reliable and his testimony will assist the jury in determining the material facts in dispute. Defendant can, of course, challenge his expert testimony through cross-examination and by proffering its own expert to present contrary evidence.

Because I find that the proffered expert testimony satisfies the reliability prong of Rule 702, most of ITW's arguments for summary judgment are rendered moot.[5] However, ITW does argue that the warning defect claim must fail independent of Sheesley's testimony because the risk of injury by pneumatic injection was not reasonably foreseeable. I find that plaintiffs have adduced enough evidence—primarily, the pressurized design of the cell—to create a genuine dispute as to whether ITW should have foreseen this particular risk. Of course, any evidence that might establish the minimal likelihood of such an occurrence can be considered at trial.[6]

---

[5] ITW attempts to argue that, even if I admit Sheesley's testimony, there is still no genuine dispute as to alternative design. I disagree; the testimony clearly creates a triable issue as to whether an alternative design was feasible and whether such a design would have eliminated the hazard that injured Mr. Reardon.

[6] ITW also argues that plaintiffs cannot prove causation because they cannot prove the presence of a high-pressure warning would have changed Mr. Reardon's conduct and averted the accident. But the Third Circuit predicted that Pennsylvania would adopt the so-called "heeding presumption" in *Pavlik v. Lane Ltd./Tobacco Exporters Intern.*, 135 F.3d 876, 881-83 (3d. Cir. 1998). The heeding presumption means that "plaintiffs ha[ve] the benefit of a rebuttable presumption that when no warning (or an inadequate warning) is provided, the user would have read and heeded an adequate warning had one been given by the manufacturer." *Lynn v. Yamaha Golf-Car Co.*, No. 10-1059, — F. Supp. 2d —, 2012 WL 3544774, at *22 n.30 (W.D. Pa. Aug. 16, 2012). While the heeding presumption is rooted in the text of the Restatement (Second) of Torts, *id.*, ITW has not argued that it is inapplicable here. With the aid of the heeding

## III. Conclusion

For the reasons set forth above, I will deny ITW's motion to exclude plaintiffs' expert testimony and its motion for summary judgment. An appropriate order follows.

---

presumption, plaintiffs have created a genuine dispute on the issue of causation.